Argued April 3; modified April 17, 1934

# BLAKE *v.* BLAKE ET AL.

(31 P. (2d) 768)

44

*Arthur I. Moulton,* of Portland (Lord, Moulton & Krause, of Portland, on the brief), for appellant.

*George L. Rauch,* of Portland (Rauch, MacVeagh & Colon and Fred A. Knutsen, all of Portland, on the brief), for respondent.

BAILEY, J. In November, 1932, the plaintiff, appellant herein, instituted suit against William H. Blake, to whom she had been married on January 30, 1931, for a decree of divorce. Ruth L. Harris, foster sister of the defendant Blake, and her husband, Arthur Harris, were made parties defendant for the purpose of barring them from any interest which they might claim in a 35-acre tract of land in Washington county, Oregon, which plaintiff avers is owned by the defendant Blake.

The complaint sets forth numerous grounds for divorce, with which, however, we are not concerned, in that no appeal has been taken from that part of the decree awarding plaintiff a divorce. It then alleges that the defendant Blake, hereinafter to be mentioned as the defendant, is the owner and occupant of the farm land above mentioned; that he has "falsely and fraudulently transferred and conveyed the same by deed to the defendant Ruth L. Harris in an attempt to cheat and defraud plaintiff of her right therein and to make it appear that defendant Blake does not own

the same"; and that said conveyance was without consideration. In her prayer the plaintiff asks for a decree of divorce, temporary maintenance, suit money, attorneys' fees, permanent alimony and an undivided one-third interest in the real property above mentioned.

The amended answer to the complaint denies the allegations hereinbefore referred to, and as an affirmative defense the defendant and codefendants allege that Blake and Ruth L. Harris are the only heirs at law of Henry P. Blake, deceased; that at the time of his death the said Henry P. Blake was the owner of the real property described in the complaint; that he died testate; that under the terms of the settlement agreement between the defendant and the codefendant Ruth L. Harris the latter was to receive and did receive as her share of said estate the real property described in the complaint; that the settlement was approved by the probate court, "and an order of distribution was made in accordance therewith"; that "thereafter such distribution was made"; and that the defendant has no right, title or interest whatever, either real or equitable, in and to said real property. The defendant also, in his affirmative answer, asks for a decree of divorce against the plaintiff.

The decree in favor of the plaintiff dissolving the marriage contract denied her any alimony, attorneys' fees or costs. She was also denied any interest in the real property, on the ground that there had been a valid transfer or release thereof by the defendant prior to January 30, 1931, the date of the second marriage between plaintiff and defendant. The plaintiff has appealed from that part of the decree denying her attorneys' fees, alimony, costs and an interest in said real property.

The evidence in the case discloses that the plaintiff and the defendant were first married in the year 1923. In May, 1929, the plaintiff herein instituted a suit for divorce against the defendant, in which the defendant filed a cross-complaint asking for a decree of divorce in his favor. Thereafter, in August of the same year, while that suit was pending, the plaintiff and the defendant renewed their marital relations. In the meantime defendant's father had died testate, devising to the defendant a tract of farm land consisting of some 35 acres near Tualatin, Oregon, on which farm the plaintiff and the defendant thereafter resided. In December of that year, while plaintiff was visiting in California, a decree of divorce was awarded the defendant. There is some question as to whether or not the plaintiff was advised until some months thereafter of the granting of this divorce.

During February, 1930, the plaintiff returned to Oregon and lived with defendant in Portland until October or November following, when they again took up their residence on the farm. While living there they were remarried. Thereafter they continued to live on the farm as husband and wife until about October, 1932, when plaintiff left. The defendant has since continued to make the farm his home.

In his will, Henry P. Blake, father of the defendant, bequeathed to his adopted daughter, Ruth L. Harris, codefendant herein, the sum of $500 out of any assets owned by him at the time of his death. To his son, the defendant herein, he devised the real property here involved, and further bequeathed to him all his personal property, charging him with the payment of $500 to Ruth L. Harris.

There was introduced in evidence a certified copy of a document designated as a waiver, dated January 24, 1931, in which the defendant stated that he waived "all claims or all interests that I may have" in the property here involved, describing it by metes and bounds, "such property having been devised to me by the will of Henry P. Blake, deceased, but which I decline to accept and have heretofore specifically agreed that said property be distributed in the above entitled estate to Ruth L. Harris". This waiver was, on the same date, acknowledged before a notary public for the state of Oregon.

There was also introduced another document designated "agreement and waiver", dated January 24, 1931, between the defendant and his sister, in which was cited the bequest of $500 to the latter and the devise of the real property to the defendant, and which further recited that it was the desire of the parties to the agreement that Ruth L. Harris receive said real property in lieu of her legacy of $500, and that the defendant receive the personal property. This document states that the parties thereto had agreed that the county court for Washington county should "enter an order distributing to the said William H. Blake said crop and furniture and granting to the said Ruth L. Harris the real property hereinbefore described"; that the parties should "receive such in full settlement of all claims by reason of heirship or by reason of bequest or devise against the estate of Henry P. Blake, deceased"; and that they "hereby waive, in consideration thereof, any claims against said estate and expressly agree that an order of distribution be entered in accordance with this agreement". This latter document was acknowledged by the defendant on Janu-

ary 24, 1931, before a notary public for Oregon and by the codefendant on February 27, 1931, before a notary public for the state of Washington.

Both of the above documents were filed on April 1, 1931, and on the same date the county court entered an order approving the final account, which order provided that the personal property be distributed to William H. Blake and the real property, describing it, "pass to Ruth L. Harris, to be held by her, her heirs, assigns, administrators or executors forever, as per the terms of the agreement of the parties on file herein".

Mrs. Harris was not called as a witness, although her husband appeared and attempted to explain the transaction between his wife and the defendant. According to his testimony, the negotiations between the parties were conducted entirely by correspondence. He explained not producing this correspondence by saying that such letters or copies of letters as Mrs. Harris had were destroyed. No attempt, however, was made by the defendant to produce or to account for not offering in evidence letters from Mrs. Harris to himself or the attorney then representing him, or copies of letters sent to her by either of them.

It may here be said that not any of the attorneys representing the parties in this litigation were connected with the former divorce proceedings or with any of the negotiations between the defendant and his sister.

Dr. Harris testified as follows:

"Q. Who conducted them [the negotiations] on your behalf; was it a lawyer or did you do it directly?

"A. Mr. Blake sent the letters and sent the waiver along with the letter explaining. We read the waiver

over, and seeing that the court had accepted it, I felt that I could as well.

"Q. The court had already accepted it when you signed it, had it?

"A. I can't say as to that.

  *   *   *   *   *

"Q. That is the reason why you signed it, was it, Mr. Harris; that the court had approved the transaction and if the court approved it, it was all right with you?

"A. Yes."

As a matter of fact, Dr. Harris did not sign any of the documents introduced in evidence, and the "waiver" on behalf of the defendant and "agreement and waiver" signed by defendant and his sister were not filed or "approved" until April 1, 1931. There is no direct testimony as to the date when Mrs. Harris actually signed the "agreement and waiver" except the acknowledgment of a notary public to the effect that she did, on February 27, 1931, appear before him and acknowledge its execution.

■■ The title to all realty upon the death of its owner passes to his devisees in the event that he died testate, otherwise, to his heirs, subject only to the right of the executor or administrator to the possession thereof for the payment of debts and bequests of the decedent: *De Bow v. Wollenberg,* 52 Or. 404 (98 P. 536, 97 P. 717); §§ 11-309 and 11-810, Oregon Code 1930.

"An estate vests, under a devise, on the death of the testator, before entry. But a devisee is not bound to accept of a devise to him *nolens volens*; and he may renounce the gift, by which act the estate will descend to the heir, or pass in some other direction under the will. The disclaimer and renunciation must be by some unequivocal act; and it is left undecided whether a verbal disclaimer will be sufficient; and some judges

have held that it may be by a verbal renunciation. Perhaps the case will be governed by circumstances." Kent's Commentaries (14th Ed.), volume 4, pp. 533, 534 [657]; Farnum v. Bryant, 34 N. H. 9; 18 C. J. 867, § 117.

Conceding, for the purpose of this case, that the defendant could have waived or renounced the devise to him by his father, of the 35-acre tract of land, the evidence preponderates toward an acceptance of the devise by him. He entered into possession of the property shortly after the death of his father, continued to live there and treated it as his own. The attempted waiver or renunciation by the defendant was not executed until approximately one year and a half after the testator's death and was not presented to the court until over two months following its execution. The "agreement and waiver" was not acknowledged, and apparently not executed, by the sister until four weeks after the plaintiff and the defendant were remarried.

This tract of land was evaluated at $5,000 by the appraisers of the estate of Henry P. Blake, deceased. Eighteen acres are under cultivation and the remainder of the property is uncleared timber land. Located on the tract is a frame house of three rooms and hall downstairs, and an unfinished second story. There are outbuildings, including a barn. It is the defendant's contention that the waiver or relinquishment filed by him was intended to relieve him of the payment of $500 to his sister, which had been made a charge against the property, and that she had agreed to accept the land in lieu of the $500.

Mrs. Harris had previously been deeded by her father 20 acres of land adjoining the tract here in-

volved, and the $500 given to her in his will was apparently for the purpose of equalizing his gifts, testamentary and otherwise, to his two children. At no time has she resided on the 35-acre tract or appeared to exercise any control over it.

■ There can be little doubt, from the evidence and the inferences to be drawn therefrom, that the attempted waiver and renunciation by the defendant was to exclude the plaintiff from any interest in this land. She was not advised by the defendant of his intention to execute such a waiver, although she was at that time living with him on the farm and was to be remarried to him in a few days. After the execution of those documents the defendant continued to live on this property, apparently in all respects as formerly, without advising his wife of what had been done.

■ The "waiver" by the defendant was contingent upon the execution by his sister of the so-called "agreement and waiver", which, as we have seen, was not executed by her until February 27, 1931. Under the facts in this case, the sister acquired no interest in the land involved herein by virtue of those documents, as title to the property had already vested in the defendant, and he could not be divested thereof in the manner attempted. Section 63-101, Oregon Code 1930, provides that conveyance of land may be made by deed, and neither of those documents has any efficacy as a conveyance. Nor did the order of the probate court based upon the agreement between the defendant and his sister have the effect of vesting in the latter the title to the property here in suit, as the title thereto upon the death of the elder Blake vested by operation of law in his son, to whom it had been devised: *State v. O'Day*, 41 Or. 495 (69 P. 542); *State v. McDonald,*

55 Or. 419 (103 P. 512, 104 P. 967, 106 P. 444); and authorities first hereinbefore cited.

■ The defendant contends that inasmuch as the plaintiff alleged in her complaint that this property had been by deed conveyed to Mrs. Harris by the defendant, she can not now assert that the only right acquired by Mrs. Harris was by virtue of the waiver and agreement above mentioned. However, the respondents denied this allegation and averred as a source of title in the sister the execution of a settlement agreement between her and the defendant and the order based thereon by the probate court. Moreover, there was no evidence whatever of any deed from the defendant to his sister and the only claim made by the latter to any right in the property is by virtue of the attempted waiver and agreement between the parties and the order of the probate court.

■ Section 6-912, Oregon Code 1930, provides that whenever a marriage shall be dissolved the party at whose prayer the decree shall be made shall in all cases be entitled to an undivided one-third interest in his or her individual right in fee, of the whole of the real estate owned by the other at the time of such decree; and that it shall be the duty of the court in all such cases to enter a decree in accordance with the provisions of the statute.

In compliance with this requirement of the law, the plaintiff herein is awarded an undivided one-third interest in and to the following described real property situate in Washington county, Oregon, to-wit: Beginning at a stone in section 25, township 2 south, range 1 west of the Willamette meridian which bears north 89° 32', west 52.50 chains from the quarter section corner of the east boundary line of said section 25 and

running thence south 20 chains, thence north 89° 32',
west 7.50 chains, thence south 20 chains, thence north
89° 32', west 10 chains, thence north 40 chains, thence
south 89° 32', east 17.50 chains to the place of begin-
ning, containing 55 acres, with the exception of the
east one-half of the southwest quarter of the south-
west quarter of section 25, township 2 south, range 1
west of the Willamette meridian, which Henry P. Blake
deeded to Ruth L. Harris on May 4, 1928, by convey-
ance recorded in Book 142 at page 381, deed records
of Washington county.

The undivided one-third interest in the above de-
scribed real property awarded to the plaintiff herein
is charged with the payment to Ruth L. Harris of
$166.67, and no more, of the $500 bequest which is
made a charge against the entire tract, together with
interest on $166.67 at the rate of 6 per cent per annum
from the date of the death of Henry P. Blake until
paid.

■ The awarding of permanent alimony to the party
not in fault is within the sound discretion of the trial
court and its decision relative thereto ought not to
be disturbed except in instances of apparent abuse of
that discretion: § 6-914, Oregon Code 1930; 19 C. J.
249, § 577 and authorities there cited. In considering
the allowance of alimony each case must depend upon
its own circumstances: *Jolliffe v. Jolliffe*, 107 Or. 33
(213 P. 415). The question of awarding costs and at-
torney's fees is also within the sound discretion of the
trial court: §§ 7-607 and 6-913, Oregon Code 1930; *Bil-
lion v. Billion*, 122 Or. 68, 73 (256 P. 389, 769). In view
of all the facts in this case, relative to the defendant's
financial condition and the plaintiff's past conduct,
an account of which would serve no good purpose,

there was no abuse of discretion on the part of the trial court in denying to plaintiff permanent alimony, attorneys' fees and costs in this proceeding.

The decree of the circuit court will be modified as above stated, with respect to awarding plaintiff an undivided one-third interest in the real property described, and in all other respects affirmed, the appellant to recover costs and disbursements in this court.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.