**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: JOHN M. COSTAS and
RACHELLE M. COSTAS,

           *Debtors.*

—————————————————

MAUREEN GAUGHAN, CHAPTER 7
TRUSTEE,

           *Appellant,*

      v.

THE EDWARD DITTLOF REVOCABLE
TRUST, and RACHELLE M. COSTAS,

           *Appellees.*

No. 06-16520

BAP No.
AZ-05-1440

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Montali, Smith, and Ahart, Bankruptcy Judges, Presiding

Argued and Submitted
May 15, 2008—San Francisco, California

Filed February 6, 2009

Before: Andrew J. Kleinfeld, N. Randy Smith, Circuit
Judges, and Richard Mills, District Judge.*

Opinion by Judge Mills

—————————————————

*The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

1379

**COUNSEL**

Paul Sala, Allen & Sala, P.L.C., Phoenix, Arizona, for the appellant.

Mark A. Bregman, Bregman & Burt, Scottsdale, Arizona, for the appellees.

**OPINION**

MILLS, District Judge:

The Bankruptcy Code's federal fraudulent conveyance provision allows a trustee to avoid "any transfer . . . of an interest of the debtor in property" within a two year reach back period where the transfer was actually or constructively fraudulent. 11 U.S.C. § 548(a)(1). The question in this case is whether an Arizona disclaimer qualifies as a "transfer . . . of an interest

of the debtor in property." Because we answer this question in the negative, the Bankruptcy Appellate Panel's refusal to avoid the disclaimer under § 548 is affirmed.

## I. FACTS

On October 18, 2001, Edward P. Dittlof ("Dittlof") created the Edward Dittlof Revocable Trust ("Trust") under Arizona law. The Trust provided that upon Dittlof's death, the Trust property would be distributed to several of Dittlof's children, including Rachelle Costas ("Costas"). Should a beneficiary die prior to distribution, the beneficiary's children would take the share.

Dittlof died on February 25, 2002, leaving Costas an interest worth at least $34,800. Costas, however, refused to accept it and, on November 7, 2002, executed a disclaimer under Arizona law to relinquish her claims to the Trust property.

Shortly thereafter, on December 3, 2002, Costas filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("the Code"). Maureen Gaughan, the Chapter 7 trustee ("Trustee"), sought to avoid Costas' disclaimer of the Trust property under 11 U.S.C. § 548. Although a previous BAP panel decision had rejected application of § 548 to similar state law disclaimers, *Wood v. Bright (In re Bright)*, 241 B.R. 664 (9th Cir. BAP 1999), the Trustee argued that the ruling had been undermined by the Supreme Court's decision in *Drye v. United States*, 528 U.S. 49 (1999). The Bankruptcy court, however, found *Drye* distinguishable. The Trustee appealed and, in a thorough opinion, the BAP also distinguished *Drye* and adhered to its prior decision in *Bright*. *Gaughan v. Costas (In re Costas)*, 346 B.R. 198 (9th Cir. 2006). The Trustee now appeals from this decision.

## II. STANDARD OF REVIEW

"On appeal this court reviews decisions of the BAP *de novo*, and thus reviews the bankruptcy court's decision under

the same standards used by the BAP." *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007) (citation and internal quotations omitted). Therefore, factual findings are reviewed for clear error and legal conclusions *de novo. Id.*

## III.　ANALYSIS

The federal fraudulent conveyance provision of the Code provides that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within two years before the date of the filing of the petition . . ." where the transfer involved actual or constructive fraud. 11 U.S.C. § 548(a)(1).[1] The parties dispute whether a disclaimer executed under Arizona law qualifies as a "transfer . . . of an interest of the debtor in property."

## A.　"Property" and Arizona Disclaimer Law

**[1]** We begin with the two relevant and disputed terms from § 548: "transfer" and "property" (or, more broadly, "an interest . . . in property"). The Code defines "transfer" expansively, reaching "each mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with — (i) property; or (ii) an interest in property." 11

---

[1]The Code also contains a provision allowing the trustee to "borrow" a state's fraudulent conveyance provision. 11 U.S.C. § 544(b). Most courts, however, have held that state fraudulent transfer rules do not reach disclaimers that relate back. *See, e.g., Essen v. Gilmore*, 259 Neb. 55, 607 N.W.2d 829 (2000) ("[I]t is the majority view that a renunciation under the applicable state probate code is not treated as a fraudulent transfer of assets under the [Uniform Fraudulent Transfers Act], and creditors of the person making a renunciation cannot claim any rights to the renounced property in the absence of an express statutory provision to the contrary."); Sara L. Johnson, Annotation, *Creditor's right to prevent debtor's renunciation of benefit under will or debtor's election to take under will*, 39 A.L.R.4th 633 (1985); *see also In re Popkin & Stern*, 223 F.3d 764, 768-69 (8th Cir. 2000) (analyzing Missouri law under § 544(b) and concluding that a disclaimer could not be avoided as a fraudulent transfer).

U.S.C. § 101(54). Whether a particular action constitutes a "transfer" is a matter of federal law. *Walker v. First Security Bank of Idaho, N.A. (In re Walker)*, 77 F.3d 322, 323 (9th Cir. 1996) (quoting *Barnhill v. Johnson*, 503 U.S. 393, 397 (1992)). However, as the definition makes clear, a "transfer" cannot occur without "property" or "an interest in property." *See* § 101(54). Thus, the key issue in the case is elucidating the meaning of "an interest . . . in property." *See Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002) ("Although the definition of transfer is obviously federal, its references to 'property' and 'interests in property' require an analysis of whether a property interest was created under state law.")

**[2]** The Code does not define "property" or "an interest . . . in property." Rather, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law," *Butner v. United States*, 440 U.S. 48, 54 (1979), meaning that "[i]n the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill*, 503 U.S. at 398 (citations omitted). Therefore, to understand the definition and scope of "property," we turn to Arizona law.

**[3]** Like other states, Arizona allows beneficiaries to renounce their interests in trusts through use of a disclaimer. *See* Az. Rev. Stat. § 14-2801 (2004) (repealed).[2] A "disclaimer"[3]

---

[2] Effective 2005, Arizona repealed § 14-2801 in favor of a statute based on the Uniform Disclaimer of Property Interest Act (1999) (now incorporated into the Uniform Probate Code as Section 11). Although the Uniform Act dropped the phrase "relation back", it did not discard its application. *See* Uniform Probate Code § 2-1106, cmt. ("This Act continues the effect of the relation back doctrine, not by using the specific words, but by directly stating what the relation back doctrine has been interpreted to mean.").

[3] Statutes also frequently refer to a "disclaimer" as a "renunciation." *See, e.g., Mapes v. United States*, 15 F.3d 138, 140 (9th Cir. 1994), abrogated by *Drye v. United States*, 528 U.S. 49 (1999) (construing "renunciation" under a prior version of § 14-2801).

has been defined as "the refusal to accept an interest in or power over property." Uniform Disclaimer of Property Interests Act § 2(3) (1999). At all relevant times, Arizona law required disclaimers to be filed with the court and a representative or fiduciary of the decedent "not later than nine months" after the effective date of the instrument. Az. Rev. Stat. § 14-2801(B), (C) (testamentary and non-testamentary, respectively). The disclaimer itself also had to "describe the property or interest disclaimed, declare the disclaimer and its extent and be signed by the disclaimant." § 14-2801(F). Where the beneficiary had previously made "[a]n assignment, conveyance, encumbrance, pledge or transfer of the property or interest or a contract" or accepted certain benefits or interests in the property, the right to disclaim was barred. § 14-2801(J), (M). The Trustee concedes the validity of Costas' disclaimer under Arizona law. *Costas*, 346 B.R. at 200.

**[4]** A properly executed disclaimer carries a significant advantage for an insolvent debtor: it shields the disclaimed interest from the disclaimant's creditors. Arizona achieved this protection through § 14-2801(G), which provides that "[a] disclaimer relates back for all purposes to the date of death of the decedent." This relation-back rule, a common feature in many states, is a legal fiction that retroactively eliminates any property interest that a disclaimant previously held in the disclaimed property. As the Supreme Court has explained, "an effective disclaimer . . . relate[s] back to the moment of the original transfer of the interest being disclaimed, having the effect of canceling the transfer to the disclaimant *ab initio* and substituting a single transfer from the original donor to the beneficiary of the disclaimer." *United States v. Irvine*, 511 U.S. 224, 239 (1994). "An important consequence of treating a disclaimer as an *ab initio* defeasance is that the disclaimant's creditors are barred from reaching the disclaimed property." *Id.* at 239-240.

**[5]** In short, Arizona's relation-back rule says that a disclaimant neither transfers nor possesses an interest in disclaimed

property and thus creditors cannot reach the disclaimed interest.

## B.   State Law Deference

To summarize, section 548 only applies to interests in "property," as defined by state law, and Arizona law says that Costas had no property interest in the disclaimed property. The remaining question, and the problematic one, is how to translate this state law rule back into the bankruptcy context.

Ordinarily, bankruptcy courts look to *Butner* to answer this question. There, the Supreme Court addressed a circuit split over the ownership of rents. *Butner*, 440 U.S. at 51-54. Some circuits followed state law in determining who received post-petition rents, whereas other circuits fashioned a federal rule of equity to allow mortgagees to receive the rents. *Id.* Ultimately, the Court rejected the federal equity rule, explaining that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Id.* at 54. Thus, "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55.

Applying the principle of *Butner* to similar disclaimers, several appellate courts have found § 548 inapplicable. *Simpson v. Penner (In re Simpson)*, 36 F.3d 450 (5th Cir. 1994) (Texas law); *Jones v. Atchison (In re Atchison)*, 925 F.2d 209 (7th Cir. 1991) (Illinois law); *Hoecker v. United Bank of Boulder*, 476 F.2d 838 (10th Cir. 1973) (concluding that Colorado disclaimer rules preclude use of the fraudulent conveyance provision contained in § 67(d)(2) of the Bankruptcy Act)*; see also In re Bright*, 241 B.R. 664 (9th Cir. BAP 1999) (Washington law). For example, the Seventh Circuit took a broad view of *Butner*, explaining that "[a]ll applicable state law must be construed to determine whether a debtor possesses a property interest," including the relation back rule.

*Atchison*, 925 F.2d at 212. The contrary view, the court found, "fail[ed] to give full application to the relation back doctrine under applicable state laws." *Id.* at 211. Based on this deferential approach to state law, the *Atchison* court concluded that a disclaimer was not a "transfer of an interest in property" subject to avoidance under § 548(a). *Id.* at 212.

**[6]** Though most courts have found that *Butner* principles preclude avoidance of disclaimers under § 548, this line of authority has been thrown into doubt by *Drye v. United States*, 528 U.S. 49 (1999).[4] In *Drye*, a tax debtor inherited his mother's estate after the IRS had obtained a tax lien on all his "property and rights to property." *Id.* at 52-53. Relying on Arkansas' relation-back disclaimer rule, Drye disclaimed his inheritance and argued that he had no property to which the IRS lien could attach. *Id.* at 53. The Supreme Court, however,

---

[4]We are the first circuit court to address *Drye*'s impact on § 548 avoidance. Lower courts have split on the issue, *compare In re Faulk*, 281 B.R. 15 (Bankr. W.D. Okla. 2002); *In re Nistler*, 259 B.R. 723 (Bankr. D. Or. 2001); *In re Kolb*, 267 B.R. 861, 866-67 (N.D. Cal. 2001), *rev'd on other grounds*, 326 F.3d 1030 (9th Cir. 2003) *with In re Schmidt*, 362 B.R. 318, 322-23 (W.D. Tex. 2007) (suggesting that *Simpson* may be invalid after *Drye*); *In re Kloubec*, 247 B.R. 246 (Bankr. N.D. Iowa 2000), *aff'd on other grounds*, 268 B.R. 173 (N.D. Iowa 2001), as have commentators, *compare* David B. Young, *The Intersection of Bankruptcy and Probate*, S. Tex. L. Rev. 351, 384-88 (2007) (concluding that "[t]ax decisions do not alter the rule that a prepetition disclaimer that is unassailable under state law should not become avoidable once a bankruptcy petition has been filed"); Kevin A. White, *A Clash of Expectations: Debtors' Disclaimers of Property in Advance of Bankruptcy*, 60 Wash. & Lee L. Rev. 1049, 1085 (2003) (concluding that *Drye* does not extend to the bankruptcy context), *with* Jon Finelli, Comment, In re Costas: *The Misapplication of Section 548(a) to Disclaimer Law*, 14 Am. Bankr. Inst. L. Rev. 567, (2006) (criticizing the BAP's decision in this case); David A. Lander, *Does the Supreme Court Decision in* Drye *Mean that a Disclaimer of Inheritance Is a Fraudulent Conveyance*, Norton Bankr. L. Adviser, No. 12 (Dec. 2002) (suggesting that, after *Drye*, courts should reassess the majority rule because "state law disclaimers are not the types of state law property rights to which the bankruptcy courts must defer in applying or not applying § 548).

rejected Drye's theory and held that the tax lien attached to disclaimed property despite state law relation-back rules. *Id.* at 52. After discussing the breadth of federal tax lien law, the Court described its analysis: "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.* at 58. Although Drye asserted that he had nothing but the right to reject a gift, the Supreme Court disagreed, reasoning that a rejected gift returns to the donor, whereas a disclaimer channels the property to another person. *Id.* Finding this power to channel a sufficient state law interest to constitute "property" under the federal tax lien provisions, the Court held that the lien attached despite Drye's refusal to take the property. *Id.* at 61.

The Trustee urges us to extend *Drye* to the bankruptcy context and recognize the "right to channel" as an "interest . . . in property" for purposes of the Code. The Trustee's argument is that *Drye* recognizes a "right to channel" interest that constitutes "property" not just for tax lien cases, but as a matter of federal law. Further, the Trustee suggests that *Drye* accords with bankruptcy policy by increasing the size of the debtor's estate. In contrast, Costas requests that we adhere to the more deferential approach of *Butner* and treat the disclaimer as Arizona would.

The Trustee's argument has some force: if the "right to channel" has been recognized as a "property" interest for one federal statute, why not for the other? Nevertheless, we believe that *Drye* is distinguishable, both factually and legally, and that its adoption in the bankruptcy context would, in any event, be inappropriate.

*First*, *Drye* is distinguishable based on timing issues. Although *Drye,* like this case, involved a collision between federal law and state relation back doctrines, the impact

between the two occurred at a different time. In *Drye*, the tax lien was already in place prior to the execution of the disclaimer. *Id.* at 52-53. Thus, before the taxpayer attempted to execute his disclaimer, the federal government already had an interest in the subject property. Application of the state law fiction would have stripped the government of this interest. *Id.*

**[7]** In contrast, the disclaimer here occurred pre-petition, meaning that the retroactive divestment of property interests occurred *prior to* the bankruptcy estate gaining any interests in the right to disclaim. Therefore, the state law did not operate to defeat any pre-existing interests. Rather, the situation in *Drye* is more analogous to a post-petition disclaimer, where a debtor invokes the disclaimer protections of state law only after the creation of the bankruptcy estate. In cases of post-petition disclaimers, courts have generally included disclaimed property in the estate, reasoning that the right to disclaim itself belongs to the estate as of the time of filing. *See* 11 U.S.C. § 541(a)(5)(A); *In re Scott*, 385 B.R. 709 (Bankr. D. Neb. 2008). This context mirrors *Drye* because in both situations full deference to the state's disclaimer rules would strip parties of pre-existing interests. Thus, *Drye* accords well with the post-petition situation, but not with pre-petition disclaimers where no prior interests exist.

**[8]** *Second*, *Drye* is distinguishable based on its legal context. Indisputably, *Drye* is, first and foremost, a tax lien case. The Court's language repeatedly stressed this limitation, *see Drye*, 528 at 52 ("This case concerns the respective provinces of state and federal law in determining what is property for purposes of federal tax lien legislation."); *id.* ("the disclaimer did not defeat the federal tax liens) (internal quotations omitted); (explaining the issue as "whether [Drye's] interest in his mother's estate constituted 'property' or 'rights to property' under § 6321"), and the cases cited were tax cases, *id.* at 59 (collecting tax cases to demonstrate that neither state exemption nor disclaimer rules interfere with tax collection). Indeed,

the Court itself even distinguished the case from the closely analogous gift tax regime. *Id.* at 57 ("The absence of any recognition of disclaimers in §§ 6321, 6322, 6331(a), and 6334(a) and (c), the relevant tax collection provisions, contrasts with § 2518(a) of the Code, which renders qualifying state-law disclaimers 'with respect to any interest in property' effective for federal wealth-transfer tax purposes and those purposes only."); *see also id.* at 57 n.3.

Admittedly, similarities exist between the tax lien statute and the Code, as both broadly rely on state law to define "property." Nevertheless, tax lien rules do not translate directly into bankruptcy rules. *See, e.g.*, *Musolino v. Sinnreich (In re Sinnreich)*, 391 F.3d 1295, 1297-99 (11th Cir. 2004) (refusing to apply *United States v. Craft*, 535 U.S. 274 (2002), an extension of *Drye*, in the bankruptcy context). In the tax lien context, collection is the primary focus. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 734 (1979). This vital function often "justifies the extraordinary priority accorded federal tax liens . . . ." *Id.* Indeed, the Supreme Court has repeatedly construed tax lien provisions to permit the government to reach property beyond the grasp of other creditors. *See, e.g., Craft*, 535 U.S. at 276 (finding that federal tax lien attached to interest in entireties property under Michigan law); *United States v. Security Trust & Sav. Bank of San Diego*, 340 U.S. 47, 51 (1950) ("[W]e hold that tax liens of the United States are superior to the inchoate attachment lien of [a state law creditor] . . . ." ).

**[9]** This purpose contrasts sharply with the policy of bankruptcy law, which largely respects substantive state law rights,[5] neither granting a creditor new rights in the debtor's property nor taking any away. *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000) ("Creditors' entitlements in bankruptcy arise in

---

[5]For a thorough exploration of the implications of this policy on bankruptcy law, *see* Thomas H. Jackson, The Logic and Limits of Bankruptcy Law (1986).

the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. The 'basic federal rule' in bankruptcy is that state law governs the substance of claims . . . .") (internal citations omitted). Indeed, the Court in *Butner* expressly invoked this goal of achieving "[u]niform treatment of property interests by both state and federal courts within a State . . . ." *Butner*, 440 U.S. at 55. By replicating state law rights, the Court hoped to (1) reduce uncertainty, (2) discourage forum shopping, and (3) "prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.* (quoting *Lewis v. Mfrs. Nat. Bank*, 364 U.S. 603 (1961)). Extending the rule in *Drye* to the bankruptcy context, however, would undermine all of these goals. Uncertainty would increase because disclaimers, though generally valid, would lose effect in bankruptcy. Second, forum shopping would increase because creditors of disclaimants would have an incentive to push for bankruptcy in order to gain an interest in otherwise protected property. Finally, many creditors, including those in this case, would receive a windfall: although the disclaimed property was absolutely protected under state law, they would receive a share of the property solely because Costas filed for bankruptcy within two years of her disclaimer. Thus, based on the concerns set out in *Butner*, little justification exists for permitting creditors to reach property that, but for the fortuity of a bankruptcy filing, would remain beyond their grasp.

Further, the inappropriateness of extending *Drye* is reinforced by comparing the Code's treatment of exemptions to the treatment under the federal tax lien statute. In *Drye*, the Court stressed the breadth of "property" under § 6331 of the Internal Revenue Code by noting that the tax lien statute recognized only a narrow range of exemptions, none of which mentioned disclaimers. *Drye*, 528 U.S. at 56-57. On this ground, the Court distinguished the gift tax statute, which explicitly incorporates an exception for disclaimers. *Id.*[6]

---

[6] The estate tax employs the same exception for qualified disclaimers. *See* 26 U.S.C. § 2046.

While the Code lacks an express exemption for disclaimers like § 2518(a), its exemptions are nonetheless quite broad, allowing a debtor to take advantage of all available state law exemptions. 11 U.S.C. § 522; *see also Owen v. Owen*, 500 U.S. 305, 308 (1991). Again, this highlights the key difference between "property" for purposes of tax collection and for bankruptcy: the former largely trumps state law, the other tries to incorporate it.

**[10]** For these reasons, we find that *Drye* is distinguishable and we refuse to extend its logic to the bankruptcy context. Instead, we apply the principles of *Butner* and hold that a disclaimer, properly executed under Arizona law, is not a "transfer . . . of an interest of the debtor in property" for purposes of § 548.

## C.   The Existence of a "Federal Interest"

**[11]** Having determined that *Butner* controls, we briefly consider the Trustee's arguments that the federal interest exception identified in *Butner* applies to override the normal rule of state law deference.[7] *Butner*, 440 U.S. at 55 (explaining that state law controls "[u]nless some federal interest requires a different result"). The Trustee identifies two such "federal interests." First, she proposes an interest in bankruptcy estate augmentation. However, as discussed in greater depth above, recognizing such a generic interest in expanding

---

[7]Although *Butner*, rather than *Drye*, provides the proper rule for application in the first instance, it should be noted that *Drye* may still hold relevance in the bankruptcy context. As the Court explained in *Butner*, deference to a state's definition of "property" may be disregarded when a contrary federal interest exists. Where such an interest is identified, *Butner* drops out of the equation; therefore, the logic of *Drye* would likely control.

This also highlights the conceptual differences between *Drye* and *Butner*. In the bankruptcy context, a federal interest will not always exist; in contrast, tax collection is an omnipresent federal interest in the tax lien context.

the debtor's property would, at least in this case, interfere with *Butner*'s three goals of avoiding uncertainty, forum shopping, and windfall recoveries. As such, this interest is insufficient.

**[12]** Second, the Trustee points out that § 548 is a *federal* rule of avoidance and, as such, constitutes an interest sufficient to override the normal state definitions of "property." While we agree that Congress certainly could have trumped state law with a specific federal law provision, the use of the general term "property" in § 548 belies any intent to do so. Congress premised § 548's application on the existence of "property" or "an interest . . . in property." Nothing suggests that these terms merit a special gloss simply because they appear in a *federal* avoidance provision. As such, we decline to depart from the normal interpretive rules of *Butner*.

## IV.    CONCLUSION

Applying *Butner*'s deferential approach to state law, rather than the rule of *Drye*, we hold that a disclaimer, properly executed under Arizona law, does not qualify as the "transfer . . . of an interest of the debtor in property" for purposes of § 548. Therefore, the Bankruptcy Appellate Panel is affirmed.