283 P.3d 676

In the Matter of the ESTATE OF J. Scott GARDNER, Deceased.

Wayne K. Gardner, Personal Representative and Trustee of the J. Gardner Revocable Living Trust, Petitioner/Appellee,

v.

Marlene Richardson, Respondent/Appellant.

No. 1 CA–CV 11–0519.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 9, 2012.

Gust Rosenfeld, PLC By Timothy J. Watson, Chas W. Wirken, Phoenix, Attorneys for Petitioner/Appellee.

Murphy Law Firm, Inc. By Thomas J. Murphy, Phoenix, Attorneys for Respondent/Appellant.

## OPINION

GOULD, Judge.

¶ 1 This is an appeal taken from the trial court's order determining that Appellant, Marlene Richardson, was responsible for payment of the mortgage interest and all other expenses associated with the life estate interest she received in Decedent J. Scott Gardner's Prescott house ("the Property"). Richardson challenges the court's finding that her disclaimer was barred under Arizona Revised Statutes ("A.R.S.") section 14–10013(B)(1). Based on Richardson's conduct in continuing to occupy the Property to the exclusion of others, her knowledge of her liability for expenses related to the Property, and her belated attempt to disclaim her life estate interest, we affirm the trial court's determination her disclaimer was ineffective.

### Facts and Procedural Background

¶ 2 Upon Decedent's death, Richardson was granted a life estate interest in the Property. Under the terms of Decedent's Amended Trust, at the termination of Rich-

ardson's life estate, the Property would pass to Decedent's two children ("Remaindermen"). The life estate provisions directed Richardson to maintain the Property as if it was her own; to pay all taxes, utilities, homeowners association fees and insurance on the property; and to be responsible for "[a]ny other reasonable and customary fees that would normally accompany a property."

¶ 3 At Decedent's death, the Property was subject to a $205,330 mortgage ("the Mortgage"). From the time of Decedent's death, the Trust paid the principal and interest expenses on the Mortgage. Wayne Gardner, the successor trustee of Decedent's Trust, petitioned the court for instructions to determine who, between Richardson and Remaindermen, would be responsible for paying the interest and the principal of the Mortgage. In August 2009, the court found that Richardson, in exchange for her life estate, was required under the terms of the Trust to pay "reasonable interest" on the Mortgage, and that the current interest on the mortgage payment of 6% "is a reasonable rate." Based on the fact that Richardson's life estate would pass to the Remaindermen upon her death, the court decided that the Remaindermen were required to pay the principal on the Mortgage.

¶ 4 On May 21, 2010, Richardson mailed Gardner a letter seeking to disclaim her interest in the Property effective September 23, 2008. In August 2010, Gardner filed a petition to remove Richardson and Remaindermen as beneficiaries of the Trust. Gardner sought "a declaration from the Court stating that Richardson is responsible to pay (i) all Mortgage interest paid by the Trust from the date of Decedent's death until current and (ii) all other expenses associated with the Property as set forth in the First Amendment [to Decedent's Trust]." Arguing that Richardson was barred from disclaiming her interest under A.R.S. § 14–10013(B), Gardner sought to remove Richardson as a beneficiary and reduce her distribution to offset her willful failure to pay the Mortgage interest and expenses.

¶ 5 Gardner and Richardson filed cross-motions for summary judgment. Gardner argued Richardson's acceptance of the life estate, as evidenced by emails Gardner received from her spanning October 2008 to February 2009, barred Richardson's later attempt to disclaim. Gardner further argued that Richardson's disclaimer was untimely. Gardner asserted Richardson did not disclaim her interest until May 21, 2010—over nine months after the court issued instructions that Richardson was required to pay interest on the Mortgage—and two months after Gardner sent Richardson a form of renunciation, which purportedly provided Richardson an opportunity to renounce her interest in the life estate. In her cross-motion, Richardson denied she had accepted the life estate. Richardson argued she never received a deed or other documentation evidencing ownership of the life estate interest and she did not have the ability to sell her interest or use it as collateral.[1]

¶ 6 The court rejected Richardson's argument and ordered that any distribution made to Richardson by Gardner could be reduced to pay the estate for expenses Richardson owed in connection with her life estate interest in the Property.[2] The court concluded Richardson had accepted the life estate "by asserting her right to exclusive possession"

---

1. In the midst of the motions for summary judgment, the parties filed, and the court granted, a stipulation regarding the Property. The parties stipulated the value of the Property was approximately equal to the outstanding principal of the Mortgage and that it would be economically detrimental to continue to make mortgage payments. On February 23, 2011, the court permitted Gardner to cease making payments on the Mortgage and to "take any and all necessary actions for the Trust to dispose of the Property in the most timely and efficient manner possible." By the time of this appeal, the Property had been sold at a foreclosure sale.

2. Although the Property has been sold at a foreclosure sale, the issue concerning reduction in Richardson's distribution for the Property's expenses is still pending before the trial court. The parties did not provide, and the appellate record does not reveal, the amount Richardson owed for expenses on the Property. This amount would appear to be comprised of the 6% interest payments accrued from the time of Decedent's death to the time the Property was sold at a foreclosure sale in addition to the utilities and other maintenance expenses Richardson was directed to pay under the terms of the life estate.

to the exclusion of Remaindermen and "their agents," and thus, any later disclaimer was "irrevocably barred." The court stated "[t]his ruling opens the way for [Gardner] to reduce any gifts to Richardson by an amount equal to any interest paid by the estate on the Prescott Property after the Decedent died," but it left more detailed determinations of the amount Richardson owed to be calculated after the estate is finalized. Richardson timely appealed and we have jurisdiction pursuant to A.R.S. § 12–2101(A)(9).

### Discussion

¶ 7 We review a trial court's ruling on cross-motions for summary judgment de novo. *Nelson v. Phx. Resort Corp.*, 181 Ariz. 188, 191, 888 P.2d 1375, 1378 (App.1994). We view the facts in the light most favorable to the party against whom summary judgment was granted. *Id.* On appeal, we will affirm the grant of summary judgment if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Orme School v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

¶ 8 Both parties agree that the sole issue on appeal is whether Richardson's disclaimer is barred by her prior acceptance of the subject life estate. "[D]isclaimer of an interest in property is barred if … [t]he disclaimant accepts the interest sought to be disclaimed." A.R.S. § 14–10013(B)(1); *see also In re Costas*, 555 F.3d 790, 793 (9th Cir.2009) ("Where the beneficiary had previously … accepted certain benefits or interests in the property, the right to disclaim was barred."). "Disclaimer" is defined as "the refusal to accept an interest in or power over property." A.R.S. § 14–10002(3). The statute, however, does not define "accept" or "acceptance."

¶ 9 In the absence of a statutory definition for "acceptance," we will examine the facts of the case to determine whether Richardson's conduct constitutes acceptance of the life estate. When a devisee takes possession and exercises control over the devised property, without contemporaneously and objectively manifesting any intent to disclaim, the acts of possession and control constitute

conclusive evidence of acceptance. *See, e.g., Evans v. Blankenship*, 4 Ariz. 307, 316, 39 P. 812, 813 (1895) ("'Acceptance may be presumed if the gift is beneficial, and use[ ] is evidence that it is beneficial.'") (quoting *Abbott v. Cottage City*, 143 Mass. 521, 10 N.E. 325, 329 (1887)); *Crumpler v. Barfield & Wilson Co.*, 114 Ga. 570, 40 S.E. 808, 810 (1902) ("The fact that [devisee] had remained in possession a reasonable time after entering thereon under the provisions of the will, and had not within such time expressed in any way her dissatisfaction to remain thereon, would conclusively show an election on her part to remain satisfied on the land."); *Blake v. Blake*, 147 Or. 43, 31 P.2d 768, 771 (1934) (stating that acceptance was evidenced by devisee's actions entering into possession of the property, continuing to live on it, and treating it as his own); *In re Estate of Lyng*, 608 N.W.2d 316, 319 (S.D.2000) (stating that exercise of "dominion and dictation" over a gift, even if made as an attempt to direct the gift being renounced, is "virtually an acceptance").

¶ 10 The conclusion that such actions represent acceptance is further evidenced by a devisee's failure to exercise her opportunity to renounce or disclaim her interest within a reasonable time period. *See, e.g., In re Pellicer's Estate*, 118 So.2d 59, 60 (Fla.App.1960) ("The law presumes the acceptance by the testamentary donee of a beneficial gift made to him under the provisions of a will, which presumption is conclusive where the donee has had an opportunity to elect and has not rejected the gift within a reasonable time."); *Seifner v. Weller*, 171 S.W.2d 617, 622 (Mo. 1943) ("Where the beneficiary has had the opportunity to renounce and has failed so to do within a reasonable time, the presumption of acceptance has been held to be conclusive.").

¶ 11 The undisputed facts show that Richardson accepted her life estate interest in the Property prior to any attempts at disclaimer. Richardson physically occupied the property in the same manner she had prior to Decedent's death. Richardson arranged to pay the utilities and taxes on the Property as required by the life estate agreement. Fi-

nally, Richardson made repeated and affirmative statements to Gardner asserting her present right to "enjoy the benefits of ownership during [her] lifetime":

> Please pass along my, reply and remind [Remaindermen] that they do not have the right to enter the house at will. Nor do their agents.
>
> The life estate exhibit will be recorded with the Will and should probably be attached to the Title. I can take care of that.
>
> [Decedent] bought the house for me. There's no way I would even consider giving it up.

¶ 12 Richardson's statements also indicate her understanding that as life tenant she would be financially responsible for a portion of the Mortgage—a "reasonable and customary fee[ ] that would normally accompany a property." Richardson sent Gardner two emails that evidence her awareness of the financial encumbrances of the Property. In an email sent on January 30, 2009 she said:

> I'm content with the way Scott left things. He had planned to leave me the Prescott house with a $100,000 mortgage. Since he refinanced, unbeknownst to me, he ended up with a mortgage of $208,000. So that explains why he left me the odd amount of $108,000.

Shortly thereafter, Richardson reaffirmed her intention to accept the interest with full knowledge of the Mortgage, stating:

> The [Remaindermen] talked Scott into that Life Tenancy Agreement. Now they don't like it? Do they seriously think I will give up the house? Scott bought the house for me ... [i]t was his intention to leave it to me with a mortgage of $100,000. I don't know why he refinanced, but he did. Probably to the amount of $208,000— which is why he left me the odd sum of $108,000.

¶ 13 We reject Richardson's argument that these statements merely expressed her desire to accept the life estate before she learned of her responsibility to pay the interest portion of the Mortgage. This claim is unsupported by the record, and it does not overcome Richardson's burden of proving she effectively disclaimed the interest prior to accepting it. *See Daley v. Daley*, 308 Mass. 293, 32 N.E.2d 286, 290 (1941) (stating that renouncing party bears burden of proving renunciation); *see also Garfield v. White*, 326 Mass. 20, 92 N.E.2d 575, 579 (1950) ("A renunciation or disclaimer ... must be clear and unequivocal."). Although Richardson may have concluded that the Mortgage rendered her life estate interest in the Property an onerous, rather than beneficial gift, her failure to act on this conclusion before she exercised her interest barred any later attempts to disclaim.[3] Accordingly, Richardson's disclaimer is "ineffective." *See* A.R.S. § 14–10013(B)(1), (F).

### Conclusion

¶ 14 Based on Richardson's conduct in continuing to occupy the Property to the exclusion of others, her knowledge of her liability for expenses related to the Property, and her belated attempt to disclaim her life estate interest, we affirm the trial court's determination her disclaimer was ineffective.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and PETER B. SWANN, Judge.

---

3. Prior to Richardson's attempted disclaimer, Gardner had sent Richardson and the Remaindermen a form of renunciation providing them an opportunity to relinquish their interest in the Property, which was not returned. Because we hold that Richardson accepted the life estate interest as early as 2008, the form of renunciation provided to her by Gardner in March 2010 was barred as well. The court correctly concluded that by "March 2010 ... [Richardson's] ability to disclaim her interest was irrevocably barred under the terms of [A.R.S. § ] 14–10013(B)(1)."