579 So.2d 437 (1991)
SUCCESSION OF Clare Fogarty NEUHAUSER.
No. 90-C-1342.
Supreme Court of Louisiana.
May 6, 1991.
*438 Andrew M. Edwards, II, Montgomery, Barnett, Brown, Read, Hammond & Mintz, Gordon P. Serou, Jr., and John H. Ryan, Ryan & Willeford, New Orleans, for applicant.
Alan B. Tusa, New Orleans, Brian D. Zeringer, Gretna, for David A. Neuhauser, Jr., Respondent.
DENNIS, Justice.
In this case a creditor seeks to reopen a succession in order to have a debtor's renunciation of a legacy revoked so that the creditor may accept the legacy in the debtor's stead. After a trial-type hearing, the district court concluded that proper cause to reopen the succession had not been shown. On appeal, the creditor argued that the renunciation of the legacy and the closing of the succession without prior notice to the creditor deprived it of a right or interest without due process of law in violation of the federal and state constitutions, but the Court of Appeal rejected this argument and affirmed. Succession of Neuhauser, 561 So.2d 956 (La.App. 4th Cir.1990). We affirm, concluding that the creditor failed to show that it had the right or interest under state law for which it claims constitutional protection. Before a creditor may be authorized by a court to annul a renunciation and accept an inheritance in the debtor's stead pursuant to Civil Code articles 1021, 1071 and 1072 (1870), the creditor must prove that the debtor acted fraudulently and that the renunciation caused injury to the creditor. In the present case, the creditor failed, in a full evidentiary hearing, to establish either required element. Therefore, on the showing made, the creditor did not have a right to be authorized to annul the debtor's renunciation and accept the debtor's inheritance. By the same token, under the circumstances of this case, the creditor did not actually have the right or property interest for which it claims constitutional protection. Consequently, it is unnecessary for us to reach the constitutional issue. Considering all of these factors, the trial court exercised sound discretion in concluding that proper cause had not been shown to reopen the succession and the court of appeal correctly affirmed its judgment. See La.Code Civ.P. art. 3393.

FACTS AND PROCEDURAL HISTORY
The decedent, Clare Fogarty Neuhauser, widow of David A. Neuhauser, died testate on February 10, 1986. In her will she bequeathed her estate, in equal shares, to her three children, Janet Neuhauser Zeringer, Catherine Neuhauser Bell, and David A. Neuhauser, Jr. Catherine Neuhauser Bell predeceased the decedent, Clare Fogarty Neuhauser, leaving seven children. The will was probated on February 10, 1986. Janet Neuhauser Zeringer renounced her legacy on September 21, 1987. The district court rendered judgment on October 6, 1987 sending David A. Neuhauser, Jr. and the seven children of Catherine Neuhauser Bell into possession and closing the succession. The total gross estate consisted of property valued at $176,419.24. Therefore, the legacy of one-third of the estate renounced by Janet Neuhauser Zeringer was worth no more than $58,806.
On October 4, 1988, Janet Neuhauser Zeringer's creditor, the Federal Savings & *439 Loan Insurance Corporation Resolution Fund as receiver for Alliance Federal Savings & Loan Association petitioned the court to reopen the succession of Clare Fogarty Neuhauser alleging that the creditor was a judgment creditor of Janet Neuhauser Zeringer pursuant to a judgment rendered by the United States District Court for the Eastern District of Louisiana on May 9, 1988 in the amount of $2,389,718.49 plus interest and costs, that Mrs. Zeringer's renunciation of her legacy prevented the creditor from subjecting to execution the property she would have received, and that the creditor desires to exercise its right under Civil Code article 1072 to accept the renounced legacy. At a hearing conducted on the petition on March 3, 1989, the district court concluded that proper cause to reopen the succession had not been shown and signed a judgment denying the petition on March 6, 1989.
From affidavits of record and testimony presented at the hearing on the petition to reopen the succession, we glean these antecedent events and circumstances. On January 18, 1984 Cypress Retirement Foundation, Inc. issued a promissory note in the amount of $2.38 million payable to the order of Alliance Federal Savings & Loan Association. Janet Neuhauser Zeringer affixed her signature on the reverse side of the note as a "10% restrictive endorsement". Her husband and eight other individuals also gave a 10% restrictive endorsement each. On the same date, Mrs. Zeringer and her husband also signed a continuing guaranty in which they agreed that in consideration of Alliance Federal Savings & Loan Association extending credit to Cypress Retirement Foundation, Inc., they would guarantee payment of any indebtedness of that debtor to the association up to the amount of $3 million. Also, on September 14, 1981, Mr. and Mrs. Zeringer had issued their promissory collateral mortgage note in the amount of $150,000 payable to the order of the same association. Cypress Retirement Foundation, Inc. defaulted on its obligations to Alliance Federal Savings and Loan Association and ceased to pay interest after April 1, 1984. The association foreclosed but the property mortgaged by the foundation proved to be woefully inadequate in value to secure the indebtedness. Alliance Federal Savings and Loan Association failed and on August 23, 1985 the Federal Savings and Loan Insurance Corporation became the receiver for the association. Under federal law all obligations owed to Alliance Federal Savings and Loan Association became the property of the Federal Home Loan Bank of Dallas and were assigned to the FSLIC in its capacity as receiver. On May 5, 1987 the receiver of Alliance Federal filed suit against Mr. and Mrs. Zeringer in United States District Court to enforce the promissory note, mortgage and continuing guaranty. On or about June 16, 1987 the Zeringers answered asserting defenses and a counterclaim in the amount of $8 million. On May 9, 1988 the federal court rendered a summary judgment in favor of the FSLIC as receiver of Alliance Federal and against Mr. and Mrs. Zeringer in the amount of $2,389,718.49 plus interest and costs. On August 9, 1989 Congress abolished the Federal Savings and Loan Insurance Corporation, created the FSLIC Resolution Fund, to be managed by the Federal Deposit Insurance Corporation, and transferred to that fund all the assets and liabilities of the FSLIC. On October 4, 1989 the FDIC as managing agent for FSLIC Resolution Fund was substituted for the FSLIC as receiver for Alliance Federal in the present lawsuit.
At the hearing on the petition to reopen the succession, the attorney for the defendants, feeling that additional evidence was irrelevant and redundant, objected to the introduction of testimony by the creditor. However, in the interest of justice and efficacious judicial review, the district court overruled the objection and allowed the creditor to put on all of its evidence because the court was "interested in the record being made complete in the event it is in error herein."
On appeal, the creditor, maintaining that it was a reasonably ascertainable creditor under the rulings of Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) and Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 *440 L.Ed.2d 180 (1983), asserted that it did not receive actual notice of the debtor's renunciation, and that such a deficiency amounts to a deprivation and taking of their property rights afforded under Civil Code articles 1071 and 1072. Consequently, the creditor argued that since the debtor's actions amount to a deprivation of due process under both the Louisiana and United States Constitutions, the district court abused its discretion by refusing to reopen the succession. The court of appeal disagreed, finding that the district court did not abuse its discretion in refusing to reopen the succession because the "balance of equities" favored the heirs. Succession of Neuhauser, 561 So.2d at 958.
This court granted certiorari to decide whether the creditor had a right to be authorized to annul the debtor's renunciation and accept the debtor's legacy, and, if so, whether the creditor had been unconstitutionally deprived of this right. Succession of Neuhauser, 567 So.2d 86 (La.1990). After a full review, we conclude that the creditor failed to show that it actually had such a right or property interest under state law, that the trial court correctly refused to reopen the succession, and that it is unnecessary for us to reach the constitutional issue the creditor seeks to raise.

APPLICATION OF LEGAL PRECEPTS
Before a creditor may have his debtor's renunciation of an inheritance set aside by a revocatory action and accept it in place of the heir, the creditor must prove that the party renouncing acted fraudulently and that the renunciation caused injury to the creditors. This substantive right of a creditor is established by Civil Code article 1021, the first paragraph of which provides: "The creditors of the heir who refuses to accept or who renounces an inheritance to the prejudice of their rights, can be authorized by the judge to accept it, in the name of the debtor and in his stead, according to the forms prescribed on this subject in the following section." Although a literal interpretation of article 1021 in isolation would seem to indicate that only injury to the creditors need be proven, construction of the article within the context of legislative history, doctrinal interpretations and the civil code system, requires that fraudulent renunciation be shown before a creditor can be subrogated to his debtor's inheritance.
The first paragraph of Civil Code article 1021 (1870) substantially reproduces that of article 788 of the French Civil Code of 1804. Article 1021, par. 1, essentially was enacted by the codification of 1808 (C.C. 1808, pp. 164-165, Art. 92) and reenacted in its present text as article 1014, par. 1, of the Civil Code of 1825. The wording of the first paragraphs of the French versions of the 1808 and 1825 enactments were identical to that of French Civil Code article 788, except for punctuation and phrases that were added to both the French and English versions of the 1825 enactment. ["... refuse d'accepter une succession, ou qui la repudie ... suivant les formes qui sont prescrites a cet egard dans la section suivante."] ["... who refuses to accept or... according to the forms prescribed on this subject in the following section."] One phrase pertains to the creditor's right in cases in which the debtor refuses to accept, rather than renounces, and the other refers to the procedural rules contained in a subsequent section of chapter 6 of Title I-Of Successions, Book III of the Civil Code. See article 1021, La.C.C.Comp.Ed., in 16 West's L.S.A.-C.C., p. 595 (1972).
French commentators report that, while there was initially a difference of opinion, the prevailing view was that the action to annul a renunciation provided by article 788, par. 1 of the French Civil Code was in the nature of a revocatory action and therefore required that the creditor prove fraud as well as prejudice in order to succeed. Planiol observed:
The wording of Art. 1167, which gives an action to creditors damaged by fraudulent behavior of their debtor, is general. So it applies also to the election of the eligible heir, if it is in fraud against them. Creditors can, and always could, sue, for instance, for the annulment of an acceptance of an insolvent succession.
On the other hand, Art. 788 expressly provides for an action in revocation in case of a fraudulent renunciation of the *441 succession. This article was drafted to sanction a difference between Roman and French laws. Roman law gave no action against a debtor who simply neglected to acquire some assets; .... Doubts have arisen as to the burden of proof under Art. 788. Do the creditors have to prove fraud of the renouncing heir, that means his intention to damage them, or does it suffice that they prove prejudicial results of the renunciation? Art. 788 speaks of `prejudice', whereas the general rule of Art. 1167 requires a `fraud'. Actually, the question is broader and applies to all cases of renunciation of any right (cf. Arts. 622, 1053, 1464, 2225). Today it is generally admitted that fraud must be proved (cf. Vol. II, No. 313). Arts. 622 and 788 were drafted before the principal Art. 1167 was; Art 1464, drafted after it, speaks of fraud and not of prejudice, in situations quite similar to Arts. 622 and 788.
Plainiol, Traite Elementaire De Droit Civil. Vol. 3, Part 1, §§ 1990-91 (11th ed. 1938) (footnotes omitted).
Aubry & Rau, further explained:
The general principles set forth in § 313 on the revocatory action as well as those set forth in § 312 on the creditors' exercise of the rights and actions of their debtor, are generally applicable in the cases contemplated by Article 788. In these cases, the revocatory action may be brought by the creditors of the renouncing heir only upon proving that the renunciation was fraudulent on the part of the latter.
Aubry & Rau, Droit Civil Francais, Vol IX, § 613(5)(b)(6th ed. 1954) (footnotes omitted).
Under the Louisiana Civil Codes of 1808, 1825 and 1870, as well as under the French Civil Code of 1804, the basic requirement of a successful revocatory action of any kind was proof of the debtor's fraud, i.e., the debtor's intent to deprive the creditor of his eventual right upon the debtor's property. La.Civ.Code art. 1969 (1870); La.Civ.Code art. 1964 (1825); La. Civ.Code art. 67 (1808); C.Civ. art. 1167 (1804). Consequently, when Civil Code article 1021 (1870), or any of its antecedents, is read in light of this basic principle underlying all revocatory actions, it is clear that a creditor must prove that an heir renounced his inheritance fraudulently or with an intent to wrongfully deprive the creditor of his claim on the debtor's property in order for the creditor to have a right to have the renunciation annulled and to accept the inheritance in the heir's stead. Moreover, other provisions of the 1825 and 1870 civil codes corroborate that fraud was a generic ingredient of the revocatory action. E.g., La.Civ.Code arts. 1970, 1978, 1988 (1870); La.Civ.Code arts. 1965, 1073, 1983 (1825); See Comment, The Revocatory Action, 9 Tul.L.Rev. 422, 423 (1934-35); Cf., Note, Faudulent Conveyances-Dation en Paiment to Creditor-Rights of other Creditors-Article 2658, La.Civil Code of 1870, 8 Tul.L.Rev. 277, 278 (1933-34).
In the 1984 revision of Title IV on Conventional Obligations or Contracts, Book III, of the Civil Code, the legislature dispensed with fraud as the principal criterion for revocatory actions under that title and adopted instead as a test whether the debtor's act or omission caused or increased his insolvency. La.Civ.Code arts. 2036-2044 (effective Jan. 1, 1985). The obligations articles revision did not purport to amend art. 1021 or any other rule of Title I, Book III pertaining to successions. The rules of Title IV may apply to non-contractual obligations when compatible with their nature. La.Civ.Code art. 1917. In our opinion, however, it would create disharmony with the history, settled interpretation and underlying policies of article 1021 of the Civil Code (1870) to allow creditors to attack any renunciation solely on the ground that it increased the debtor's insolvency.
First, the obligations which arise under article 1021 in the event of a fraudulent renunciation are not innominate or newly discovered obligations. They are based on article 1021 which has a venerable source in French law and a long-lived, distinguished doctrinal interpretation. When the legislature intends to change such a well established principle of law it normally does so expressly and precisely after careful *442 consideration of the impact of alteration on related provisions, e.g., in this case, the system of successions rules related to article 1021. Second, there is nothing in the obligations articles revision that suggests an intent to upset established principles of law outside the ambit of the obligations articles reform. Further, the creditor in this case does not seek to rely upon an obligation arising in contract; the present action is not based on any provision in the title on conventional obligations.
Finally, there are serious policy considerations that weigh against permitting a creditor to assail the renunciation of a legacy or an inheritance merely because it has increased the debtor's insolvency. If creditors could prevent disclaimers by heirs merely because they are insolvent, these creditors would receive more than they bargained for. Evidence indicates that creditors in evaluating risks ordinarily show little interest in their debtors' expectancies. Consumer credit is largely extended on dossiers reporting only credit history, income, assets, debts and obligations. Creditors making larger loans usually protect themselves by demanding a security interest in collateral and consequently can disregard the debtor's other resources. A. Hirsch, The Problems of the Insolvent Heir, 74 Cornell L.Rev. 587, 614 (1989) (and authorities cited therein); See also, Hersbergen, The Improvident Extension of Credit as an Unconscionable Contract, 23 Drake L.Rev. 225, 267-69 (1974); Countryman, The Diminishing Right of Privacy: The Personal Dossier and the Computer, 49 Tex.L.Rev. 837, 839-42 (1971). Further, the legitimate motives of familial devotion and estate planning that may underlie renunciations arguably should not be threatened or frustrated, and therefore they should not be vulnerable to attack unless there are grounds to claim that the renouncing party's intent was fraudulent. By the same token, the tradition of our law favoring personal autonomy is a reason against permitting creditors to compel debtors to accept successions against their wills merely because doing so would diminish their insolvency.
Not only does article 1021 require proof of fraud on the heir's part to set aside his disclaimer, but subsequent articles of the code place the burden of this proof squarely on the creditor. As article 1021 points out, the procedural forms by which a creditor may seek court authority to accept a debtor's inheritance are set forth in the following section of the Civil Code. Article 1071 of that section provides:
When the creditors wish to be authorized to accept a succession, which their debtor refuses to accept, or which he has renounced to their prejudice, they must present a petition to the judge of the place where the succession is opened, to obtain the authorization necessary for that purpose, after the debtor or his representative has been duly cited, or a counsel appointed to him, if he is absent, by the judge.
Article 1072 provides:
If, on this demand, it is proved to the judge that the debtor refuses to accept the succession, or has renounced it to the prejudice of his creditors, he is bound to authorize the creditors to accept it in his stead; and it is the duty of the judge to cause immediately to be made an inventory of the effects of the succession, to appoint an administrator to manage them, sell them and pay the creditors, on his giving good and sufficient security for the fidelity of his administration, as in the case of acceptance with the benefit of inventory.
Article 1072 is particularly important in the present case because it allocates to the creditor the burden of proving that proper grounds exist for the court to authorize the creditor to accept the succession in the debtor's stead. In other words, article 1072 requires the creditor to prove the substantive elements of his right of action, i.e., fraud on the part of the debtor and resulting injury to the creditor, before he may receive judicial approval to accept the debtor's inheritance. Article 1073 governs the distribution of succession assets, and article 1074 provides that creditors accepting in the name of their debtor do so under the benefit of inventory.
*443 Applying the foregoing precepts to the present case, we conclude that the creditor failed to plead or prove that Mrs. Zeringer fraudulently renounced her legacy or that her renunciation injured her creditors by rendering her insolvent. The creditor herein assumed in pleading, proof and argument that its right to become subrogated to her legacy accrued upon proof that she renounced her legacy after becoming indebted to the creditor. If this were the law, a creditor's revocatory action would always lie to annul the heir's renunciation or failure to accept even when the debtor was clearly solvent and in complete good faith. But this has never been the law. Under Civil Code article 1021 and its antecedents, including article 788 of the French Civil Code of 1804, creditors have been required to prove that the renouncing heir acted fraudulently to the prejudice of the creditors; in order to prove prejudice or injury, the creditor must prove that the act rendered the heir insolvent or augmented her pre-existing insolvency. Comment, The Revocatory Action, supra at 424.
In the present case, the evidence adduced by the creditor fails to demonstrate either Mrs. Zeringer's insolvency or her fraudulent intent. The record contains absolutely no evidence as to Mrs. Zeringer's assets and liabilities, other than the judgment obtained against her by the creditor herein. Of course, there is a substantial possibility that anyone who becomes a debtor under a $2.3 million judgment may have been rendered insolvent. But without concrete, particular evidence as to Mrs. Zeringer's actual financial condition, a conclusion that she was in fact insolvent would be little more than a speculation or assumption. There is even less support for the proposition that Mrs. Zeringer acted fraudulently in renouncing her legacy in favor of her brother and nephews. The record contains absolutely no evidence of her knowledge with respect to the judgment or its effect upon her financial condition and no information regarding her intention with respect to the effect, if any, of her renunciation upon the judgment creditor's rights.
The right of a creditor to attack and overturn a debtor's renunciation of an inheritance or a legacy is purely a creature of state statutory law. Nevertheless, the right may be a constitutionally cognizable property interest for the protection of which the state is required to provide an adequate procedure. In the present case, however, it is not necessary that we consider whether the interest is protected or whether the state's procedure is adequate, for, under the circumstances herein, the creditor has failed to establish the grounds necessary to give rise to the right under statutory law for which it claims constitutional protection.

DECREE
For the reasons assigned, the judgments of the court of appeal and the trial court are affirmed.
AFFIRMED.
MARCUS, J., concurs and assigns reasons.
LEMMON, J., dissents and assigns reasons.
MARCUS, Justice (concurring).
In my view, a creditor need only prove that the renunciation of the succession by the debtor caused or increased the debtor's insolvency. Here, the creditor failed to do so. Therefore, it cannot accept the succession in the debtor's stead. Accordingly, I respectfully concur.