REVISED April 15, 2010

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2010**

Charles R. Fulbruge III
Clerk

No. 09-10622

In the Matter of:  THOMAS JAMES LAUGHLIN,

    Debtor

------------------------------------------------------------------------

THOMAS J. LAUGHLIN,

                                        Plaintiff - Appellant

v.

NOUVEAU BODY AND TAN, L.L.C.; MARIE C RALSTON; TERRI J
OUELLETTE,

                                        Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before KING, JOLLY, and STEWART, Circuit Judges.

KING, Circuit Judge:

       Thomas J. Laughlin appeals the district court's order affirming the
bankruptcy court's judgment denying discharge pursuant to 11 U.S.C.
§ 727(a)(2).  The bankruptcy court determined that Laughlin fraudulently

transferred property under § 727(a)(2) by renouncing his interest in his father's estate before filing his Chapter 7 petition, and the district court affirmed. For the following reasons, we REVERSE the bankruptcy court's judgment and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Laughlin is involved in the spray tan business and has invented and implemented several technologies used in spray tan machines. He was the president of a company called Mist-On Systems, Inc. ("Mist-On"), which produced and sold spray tanning machines to tanning salons, and he also was the secretary and treasurer and a board member of Laughlin Products, Inc. ("LPI"), which was also engaged in the spray tan business.

In August 2003, Mist-On and Laughlin brought suit against one of its customers, Nouveau Body & Tan, L.L.C. ("Nouveau"), alleging, inter alia, claims of defamation and trade disparagement based on statements made by Nouveau regarding Mist-On and Laughlin's products. Nouveau answered this complaint, denied all of Mist-On and Laughlin's claims, and counterclaimed for damages arising from alleged defects in Mist-On's tanning machines, which it claimed caused a substantial loss of business. Nouveau also requested attorneys' fees for defending against Mist-On and Laughlin's allegedly baseless defamation claims. After a trial and jury verdict, a joint and several judgment for $629,000 was entered against Mist-On and Laughlin on February 15, 2007, and on May 17, 2007, the district court awarded $393,588.75 in attorneys' fees to Nouveau. Laughlin admits that neither he nor Mist-On could pay the judgments entered against them and that he began exploring options to manage his financial situation.

Also on February 15, 2007, Laughlin's father, a Louisiana resident, died intestate in Acadia Parish, Louisiana. Under Louisiana intestacy rules, Laughlin was to receive a quarter of his father's estate; Laughlin's father's estate

was valued at about $155,000. Included in this estate were 40,000 shares of LPI, which were later valued by Laughlin, in his Chapter 7 statement of assets, at $4,000; these 40,000 shares constituted 33.5% of LPI's outstanding stock. Laughlin claims that everyone in his family knew that his father's intent was to give the entire estate to Laughlin's mother, who was still married to and living with Laughlin's father at the time of his death.

Following his father's death, Laughlin and his family considered ways to ensure that his mother received the full value of his father's estate. To this end, Laughlin renounced any interest in his father's estate on June 4, 2007. Under Louisiana succession rules, Laughlin's share of his father's estate then passed to his daughter, who ultimately transferred this interest to Laughlin's mother.

On July 21, 2007, Laughlin filed a Chapter 7 bankruptcy petition, in which he disclosed the renunciation of his interest in his father's estate. Nouveau filed an adversary action against Laughlin and objected to Laughlin's discharge of debt, pursuant to 11 U.S.C. § 727(a)(2), arguing that Laughlin's renunciation of his interest in his father's estate was a transfer of property made within one year of the bankruptcy petition that was made with the intent to delay, hinder, or defraud his creditors.[1]

---

[1] Nouveau also claimed that discharge should be denied under § 727(a)(5), urging that because Laughlin had stated in his bankruptcy petition that he owned 100% of LPI's stock and in later proceedings claimed to own only 66% of LPI's stock, he had failed to explain a loss of assets and should be denied a transfer under that section. Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." Nouveau also argued that Laughlin actually did own 100% of the LPI stock and that, in either event, he should be estopped from claiming that he owned less than 100% of LPI. Laughlin responded that he had always owned only 66% of LPI and that the 100% figure was incorrectly based on "tax attribution" rules, where certain family members' stock is attributed to the taxpayer. The bankruptcy court determined that Laughlin did not fail to explain the discrepancy in his percentage ownership of LPI, that Laughlin's percentage ownership of LPI had not changed from the date of his petition, that it was inappropriate to apply Nouveau's estoppel theory to Laughlin, and that, accordingly, Laughlin should not be denied a discharge under § 727(a)(5). Nouveau cross-appealed the bankruptcy court's § 727(a)(5) determination to the district court, but the district court did not address whether Laughlin should be denied

In an oral ruling, the bankruptcy court determined that, following Drye v. United States, 528 U.S. 49 (1999), Laughlin's renunciation of his interest in his father's estate was a fraudulent transfer under § 727(a)(2). Specifically, the bankruptcy court concluded that Laughlin "had the power to channel [his inheritance interest]" and he thus transferred that interest by renouncing his inheritance; that Laughlin had the intent to delay, hinder, or defraud his creditors when he made the transfer; and that Laughlin's intent in transferring this interest was sufficient to deny discharge under § 727(a)(2).[2]

Laughlin appealed the denial of his discharge under § 727(a)(2). The district court determined that the bankruptcy court had not erred in making its factual findings, agreed with the bankruptcy court that "federal law applies in defining 'transfer' and 'property'" under § 727(a)(2), and concluded that the bankruptcy court appropriately denied discharge under § 727(a)(2). Laughlin timely appealed to this court.

---

a discharge under § 727(a)(5), reasoning that examining that issue was "not necessary" in light of its determination that the bankruptcy court correctly denied discharge under § 727(a)(2). Nouveau does not re-urge its § 727(a)(5) arguments on appeal to this court.

[2] The bankruptcy court made this determination despite finding that Laughlin's intent to transfer his interest in his father's estate to his mother was "credible." The bankruptcy court reasoned that because Laughlin's inheritance interest included a significant number of shares of LPI and because Laughlin controlled LPI and was manipulating it to reduce its exposure to creditors (by, inter alia, changing his and his wife's salaries), Laughlin had renounced his interest in his father's estate with the intent to hinder and delay Nouveau. The bankruptcy court reviewed indicators of fraud and found that Laughlin received no consideration for his renunciation, that the "transfer" was made to a family member, that Laughlin did not retain control or use of the property after its transfer, that Laughlin was in bad financial shape at the time of the renunciation, that Laughlin had not been credible in his testimony generally, and that the pattern and general chronology of the events suggested fraud. On this point, the court recounted how Laughlin had manipulated LPI and his role in the company, and that Laughlin had taken these actions shortly following the judgments entered in favor of Nouveau. The court also referenced Louisiana case law and noted that it would be "difficult" and costly for Nouveau to petition the Louisiana state courts to undo Laughlin's renunciation and that this also suggested that Laughlin transferred property with the intent to hinder, delay, or defraud his creditors.

## II. DISCUSSION

### A. Standard of Review

"We apply the same standard of review as the district court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law de novo." Cadle Co. v. Duncan (In re Duncan), 562 F.3d 688, 694 (5th Cir. 2009) (per curiam).

### B. The Bankruptcy Code, Transfer, and Interest in Property

### 1. Section 727(a)(2)

Section 727 provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless--

. . .

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2). "A bankrupt's violation of the provisions of 11 U.S.C. § 727 entirely bars discharge . . . ." Thibodeaux v. Olivier (In re Olivier), 819 F.2d 550, 552 (5th Cir. 1987). "The debtor's entitlement to a discharge must . . . be determined by federal, not state, law." First Tex. Sav. Ass'n v. Reed (In re Reed), 700 F.2d 986, 991 (5th Cir. 1983).

The creditor "bears the burden of establishing the elements that would prevent discharge." Cadle Co. v. Pratt (In re Pratt), 411 F.3d 561, 565 (5th Cir. 2005). "The exceptions [to discharge] are construed strictly against the creditor and liberally in favor of the debtor." Duncan, 562 F.3d at 695.

> To establish that discharge should be denied under § 727(a)(2)(A), a creditor must show four elements: "(1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate."

Pratt, 411 F.3d at 565 (alterations in original) (quoting Pavy v. Chastant (In re Chastant), 873 F.2d 89, 90 (5th Cir. 1989)). Here, the parties dispute whether the pre-petition renunciation of Laughlin's succession rights constituted a "transfer" of property for the purposes of § 727(a)(2) and, if a transfer of property did occur, whether the transfer was done with intent to hinder, delay, or defraud creditors.

### 2. Transfer and Interest in Property

The bankruptcy code defines "transfer" to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with-- (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). "'What constitutes a transfer and when it is complete' is a matter of federal law . . . since . . . the statute itself provides a definition of 'transfer.'" Barnhill v. Johnson, 503 U.S. 393, 397 (1992) (quoting McKenzie v. Irving Trust Co., 323 U.S. 365, 369 (1945)). However, "property" and "interest in property" are not defined in the code. "In the absence of any controlling federal law, [property and] interests in property are [ ] creature[s] of state law." Simpson v. Penner (In re Simpson), 36 F.3d 450, 452 (5th Cir. 1994) (per curiam) (citing Barnhill, 503 U.S. at 398).

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.

Butner v. United States, 440 U.S. 48, 55 (1979) (internal quotation marks omitted).

### 3. Interests in Property under Simpson, Drye, and Costas

#### i. Simpson

We have previously looked to state law to determine whether a disclaimer of an interest in an estate constituted a transfer of "property" under the bankruptcy code. In Simpson, we considered whether, "under Texas law, a valid disclaimer or renunciation of an inheritance is . . . a fraudulent transfer [under 11 U.S.C. § 548]."[3]   36 F.3d at 451. There, the debtor's father passed away, leaving a testamentary disposition to the debtor. Id. The debtor disclaimed this inheritance, which then passed to the debtor's children under Texas law. Id. The next day, the debtor filed a voluntary petition under Chapter 7. Id. The trustee appointed to oversee the debtor's estate filed a petition to set aside the disclaimer as a "fraudulent transfer" under 11 U.S.C. § 548(a). Id. The bankruptcy court granted the trustee's petition, but the district court reversed, holding that a pre-petition disclaimer of inheritance is not a fraudulent transfer. Id.

On appeal, we looked to Texas law to define any "interest in property" that the debtor may have had. Id. at 452. We determined that, under Texas law, a disclaimer of an inheritance "relates back" such "that a beneficiary never gains

---

[3]   Section 548 provides, in relevant part:
The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-- made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A) (emphasis added).

possession of disclaimed property." Id. We then looked to Jones v. Atchison (In re Atchison), 925 F.2d 209 (7th Cir. 1991), where the Seventh Circuit "held that after the execution of the disclaimer, the debtor did not have a property interest to transfer [under Illinois law]." Simpson, 36 F.3d at 452. Following Atchison, we determined that "[t]he law in Texas is similar to the law in Illinois in respects to the relation back doctrine and the property interests of the beneficiaries. . . . Both sets of laws hold that under the relation back doctrine, a beneficiary never possessed renounced property." Id. Accordingly, we "h[e]ld that under Texas law a disclaimer is not a fraudulent transfer under 11 U.S.C. § 548." Id. at 453.[4]

<u>ii. Drye</u>

Nouveau argues that we should not apply Simpson here, urging that it was superseded by the Supreme Court's decision in Drye. In that case, Drye was insolvent and owed the Government a large tax debt, for which federal tax liens had attached to all his assets. 528 U.S. at 52. Comparable to Simpson and the instant case, Drye's mother died intestate in Arkansas, leaving Drye as her sole heir. Id. Drye disclaimed his interest in his mother's estate, which then, under Arkansas law, passed to his daughter. Id. Drye's daughter then set up a spendthrift trust,[5] naming her parents as beneficiaries. Id. at 53–54. Under Arkansas inheritance law, "[t]he disavowing heir's creditors . . . may not reach [disclaimed property]." Id. at 53.

---

[4] In addition to the Seventh Circuit in Atchison, and the Ninth Circuit (discussed below), the Tenth Circuit has "held that a disclaimer issued under Colorado law was also not a fraudulent transfer." Simpson, 36 F.3d at 453 (citing Hoecker v. United Bank of Boulder, 476 F.2d 838, 841 (10th Cir. 1973)). No other circuit court has held to the contrary, though a few bankruptcy courts have held differently. See David A. Lander, Does the Supreme Court Decision in Drye Mean that a Disclaimer of Inheritance is a Fraudulent Conveyance?, 12 NORTON BANKR. L. ADVISER 1, 3 (2002) (collecting cases).

[5] That is, "[a] trust that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest . . . ." BLACK'S LAW DICTIONARY 1654 (9th ed. 2009).

The IRS then sought to foreclose on its liens and to levy against the trust, and the trust brought an action against the Government for wrongful levy. Id. at 54. The district court ruled that the Government had properly levied against the trust because the disclaimed inheritance interest constituted "property" under the Internal Revenue Code (IRC), and the Eighth Circuit affirmed, reasoning that "state law determines whether a given set of circumstances creates a right or interest; federal law then dictates whether that right or interest constitutes 'property' or the 'right to property' under [26 U.S.C.] § 6321."[6] Id. The Court granted certiorari to address "whether Drye's interest as heir to his mother's estate constituted 'property' or a 'right to property' to which the federal tax liens attached ... despite Drye's exercise of the prerogative state law accorded him to disclaim the interest retroactively." Id. at 52 (alteration omitted).

In answering this question, the Court first considered the nature of "property" under § 6321 and observed that "the language [of § 6321] is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." Id. at 56 (internal quotation marks omitted). The Court noted that the IRC provided a list of "exclusive" exemptions to the broad nature of property under § 6321. Id. at 56–57. Searching this list of exemptions, the Court concluded that there was no recognition of "disclaimers" as an exemption. Id. at 57.

---

[6] Section 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.

The Court then rejected Drye's argument that it should look to state law to determine whether his interest in his mother's estate constituted "property" under § 6321, citing previous tax cases in which it had held that "[t]he question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." Id. at 58 (internal quotation marks omitted). Instead, the Court agreed with the Eighth Circuit's interpretation that, at his mother's death, Drye "had . . . a valuable, transferable, legally protected right to the property at issue" and held that "in determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' 'the important consideration is the breadth of the control the taxpayer could exercise over the property.'" Id. at 61 (alterations omitted) (quoting Morgan v. Comm'r, 309 U.S. 78, 83 (1940)). Applying this consideration, the Court concluded that because "Drye had the unqualified right to receive the entire value of his mother's estate . . . , or to channel that value to his daughter[, that control] rendered the inheritance 'property' or 'rights to property' [under the IRC]" and affirmed the Eighth Circuit's judgment. Id. at 60.

### iii. Costas

Nouveau argues that Drye applies here, effectively overruling Simpson, and that because Laughlin similarly had the power to channel his interest in his father's estate—either to himself or to a known successor—he thus transferred property for purposes of § 727(a)(2). We have not had occasion to consider the application of Drye as it relates to "property" or "interests in property" under the bankruptcy code; however, the Ninth Circuit has considered whether Drye applies under the bankruptcy code.[7] In Gaughan v. Dittlof Revocable Trust (In

---

[7] To date, no other circuit court has considered whether Drye applies in the bankruptcy context. Several lower federal courts have considered whether Drye applies, with most declining to extend its reasoning. Compare Lowe v. Sanflippo (In re Schmidt), 362 B.R. 318, 322–23 (Bankr. W.D. Tex. 2007) (questioning Simpson post-Drye) and In re Kloubec, 247 B.R. 246, 256 (Bankr. N.D. Iowa 2000) ("Debtors assert that as Drye involves tax liens, it is

re Costas), 555 F.3d 790 (9th Cir. 2009), the Ninth Circuit determined that a properly executed pre-petition disclaimer under Arizona law did not qualify as a transfer for the purposes of 11 U.S.C. § 548, notwithstanding Drye.

In Costas, a settlor created a revocable trust,[8] under Arizona law, that was to be distributed to several of his children upon his death. Id. at 791–92. The settlor died, and interests were distributed. Id. at 792. One of these children, Costas, disclaimed her interest in this distribution and, shortly thereafter, filed a Chapter 7 petition. Id. The Chapter 7 trustee sought to avoid Costas's disclaimer under 11 U.S.C. § 548, arguing that Drye overruled a previous Ninth Circuit Bankruptcy Appellate Panel (B.A.P.) decision, Wood v. Bright (In re Bright), 241 B.R. 664 (B.A.P. 9th Cir. 1999), which held that a validly effected disclaimer did not constitute a transfer for purposes of § 548 due to the relation-

---

distinguishable from issues raised in the bankruptcy context. However, it is the conclusion of this Court that, even though Drye was a tax lien case, the issue decided was identical to the issue presented here, that is, whether the state doctrine of relationship-back can modify rights created under Federal statutes."), aff'd on other grounds 268 B.R. 173 (N.D. Iowa 2001) with Garrett v. Bank of Okla. (In re Faulk), 281 B.R. 15, 20 (Bankr. W.D. Okla. 2002) ("Even though Drye involved the construction of a tax lien statute, the trustee urges this court to apply the Drye holding to the instant case. He asserts that the definition of "transfer" under [§] 541 of the Bankruptcy Code is no less expansive than under [§] 6321 of the [IRC]. This court, however, is not persuaded that Drye has application here for reasons both factual and legal.") and Grassmueck v. Nistler (In re Nistler), 259 B.R. 723, 726–27 (Bankr. D. Or. 2001) ("I respectfully disagree with [Kloubec]. In Drye, the Supreme Court specifically relied on the language of § 6321 of the [IRC]. All of the cases cited by the Drye Court involved tax liens."). A number of commentators have also confronted whether Drye applies in bankruptcy and have equivocated about its applicability. See generally Jon Finelli, Comment, In re Costas: The Misapplication of Section 548(a) to Disclaimer Law, 14 AM. BANKR. INST. L. REV. 567 (2006) (criticizing the B.A.P.'s decision in In re Costas); Lander, supra note 4 (recommending that courts that recognize state relation-back fiction reconsider those holdings post-Drye); Stephen E. Parker, Can Debtors Disclaim Inheritances to the Detriment of their Creditors?, 25 LOY. U. CHI. L.J. 31 (1993) (suggesting that courts should ignore the relation-back fiction); Kevin A. White, Note, A Clash of Expectations: Debtors' Disclaimers of Property in Advance of Bankruptcy, 60 WASH. & LEE L. REV. 1049 (2003) (arguing that Drye does not apply and that courts should not "defeat" pre-petition disclaimers).

[8] That is, "[a] trust in which the settlor reserves the right to terminate the trust and recover the trust property and any undistributed income." BLACK'S LAW DICTIONARY at 1654.

back doctrine. Costas, 555 F.3d at 792. The bankruptcy court found Drye distinguishable, and the B.A.P. affirmed. The trustee appealed to the Ninth Circuit. Id.

On appeal, the Ninth Circuit noted that, while the question "[w]hether a particular action constitutes a 'transfer' is a matter of federal law," "a 'transfer' cannot occur without 'property' or 'an interest in property'" and that "in the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." Id. at 793 (internal quotation marks, modifications, and citations omitted). Then, in looking to Arizona law, the Ninth Circuit determined that Arizona treated a disclaimer as relating back to the date of death of the decedent. Id. at 793–94. Similarly to Texas and Arkansas law discussed above, the effect of such a transfer was that the "disclaimant [is treated as] neither transfer[ring] nor possess[ing] an interest in disclaimed property . . . ." Id. at 794. The Ninth Circuit then looked to cases post-Butner and concluded that "[t]hough most courts have found that Butner principles preclude avoidance of disclaimers under § 548, this line of authority has been thrown into doubt by Drye[.]" Id.

Specifically, the trustee urged that the Ninth Circuit "extend Drye to the bankruptcy context and recognize the 'right to channel' as an 'interest . . . in property' for purposes of the [bankruptcy c]ode." Id. at 795. However, the court rejected such an extension, holding "that Drye is distinguishable, both factually and legally, and that its adoption in the bankruptcy context would, in any event, be inappropriate." Id. First, the Ninth Circuit determined that Drye is factually distinguishable, noting that the tax lien in Drye was already operative before the disclaimer, while in Costas, the disclaimer occurred before the bankruptcy petition. Id. at 795–96. Second, the court held that Drye is legally distinguishable, concluding that the Court's repeated reference to the scope of the question presented in Drye suggested it was limited solely to the tax lien

context. On this point, the Ninth Circuit recounted how the Court had "repeatedly construed tax lien provisions to permit the government to reach property beyond the grasp of other creditors." Id. at 796 (citing references). Finally, the court noted that the scope of exemptions under the bankruptcy code is significantly broader than the exemptions allowed under the IRC and concluded that this "highlights the key difference between 'property' for purposes of tax collection and for bankruptcy: the former largely trumps state law, the other tries to incorporate it." Id. at 797.[9]

### 4. Conclusion

We find the reasoning of Costas persuasive, and we hold that Butner's deferential approach to state property law, rather than the rule of Drye, controls when determining whether a debtor has transferred "property" or "interests in property" by executing a pre-petition disclaimer under § 727(a)(2). The Ninth Circuit's reasoning is sound: the bankruptcy code defines "transfer," but to effect a transfer there must be "property" or an "interest in property." And the

---

[9] In Costas, the trustee also argued that, following Butner, there was a "federal interest" exemption that should preclude state law deference. Specifically, the trustee argued that (1) there was a federal interest in bankruptcy estate augmentation and that (2) § 548 created a federal rule of avoidance. Id. at 798. The Ninth Circuit rejected these arguments, determining that as to (1) "such a generic interest in expanding the debtor's property would . . . interfere with Butner's three goals of avoiding uncertainty, forum shopping, and windfall recoveries," and thus the interest was insufficient; and as to (2) there was nothing in § 548 that suggested a deviation from Butner, when Congress had used the generic terms "property" or "interest in property" as it had in other sections of the bankruptcy code. Id. at 795–98. Accordingly, the Ninth Circuit "[a]ppl[ied] Butner's deferential approach to state law, rather than the rule of Drye[, held that] a disclaimer, properly executed under Arizona law, does not qualify as the 'transfer . . . of an interest of the debtor in property' for purposes of § 548," and affirmed the B.A.P. Id. at 798.

Nouveau does not specifically urge that a comparable "federal interest" supersedes deference to state law conceptions of property under Butner, but instead argues generally that "[t]he Bankruptcy Code is a purely federal law creature" and that "discharge" is an issue of federal law. However, to the extent that Nouveau's argument presents a superseding federal interest, we find the Ninth Circuit's reasoning persuasive, and we decline to hold that the generic "federal interests" in bankruptcy or discharge preclude deference to state property law here.

Supreme Court has repeatedly held that "[p]roperty interests are created and defined by state law" in the absence of a controlling federal interest. Butner, 440 U.S. at 55. Drye is distinguishable here because its reasoning drew from the particularities and structure of the IRC. Further, like in Costas, Laughlin renounced his interest in his father's estate pre-petition, which factually differentiates the post-tax-lien disclaimer in Drye.[10] Accordingly, Simpson continues to be good law, post-Drye, and we must look to Louisiana law in order to determine whether Laughlin transferred "property" or an "interest in property" here.

## C. Renunciation of Inheritance Rights under Louisiana Law

Under the Louisiana Civil Code, "[a] successor is not obligated to accept rights to succeed [inheritance rights]. He may accept some of those rights and renounce others." LA. CIV. CODE ANN. art. 947 (West 2000). "To the extent that a successor renounces rights to succeed, he is considered never to have had them." Id. art. 954 (emphasis added). "The rights of an intestate successor who renounces accrete to those persons who would have succeeded to them if the successor had predeceased the decedent." Id. art. 964.

These provisions in the Louisiana Civil Code are comparable to the Texas law at issue in Simpson and the Arizona law at issue in Costas because Louisiana law also treats a renouncing successor as never having had an interest in property. Cf. Simpson, 36 F.3d at 452 ("The effect of the relation back doctrine is that a beneficiary never gains possession of disclaimed property."); Costas, 555 F.3d at 794 ("In short, Arizona's relation-back rule says that a

---

[10] It has been recognized by several courts and commentators that post-petition disclaimers of inheritance are not valid under 11 U.S.C. § 541(a)(5). See, e.g., Parker, supra note 7 at 38 ("[T]he language of [§ 541(a)(5)] evidences congressional intent to secure for the trustee the power to accept the devise on behalf of the creditors and to preclude the debtor from exercising the power to disclaim." (collecting cases)). We do not confront this issue today given that Laughlin renounced his interest pre-petition.

14

disclaimant neither transfers nor possesses an interest in disclaimed property . . . ."). As such, Laughlin urges that, as in Simpson, we should hold that Laughlin's pre-petition renunciation of his interest in his father's estate was not a "transfer" of "property" or an "interest in property" under § 727(a)(2).

Nouveau responds that the Louisiana law is different from the state laws at issue in Costas and Simpson and urges that its differences are sufficient to support the district court's determination that Laughlin transferred property or an interest in property for the purposes of § 727(a)(2). Specifically, Nouveau argues that Louisiana law allows a creditor to reopen the succession to accept a debtor's renounced interest, with the result that there is a creditor's "interest in property" sufficient to support the denial of Laughlin's discharge under § 727(a)(2). We disagree.[11]

Under Louisiana law:

---

[11] Nouveau also argues that Louisiana Civil Code article 960 supports its argument that Laughlin transferred property under § 727(a)(2). Article 960 provides that:
> A renunciation shall be deemed to be an acceptance to the extent that it causes the renounced rights to devolve in a manner other than that provided by law or by the testament if the decedent died testate.

LA. CIV. CODE ANN. art. 960. Commentators have interpreted article 960 as pertaining to situations where the successor, in the act of renunciation itself, tries to direct his interest in a manner other than that provided by law (i.e., "I renounce in favor of X."). See KATHRYN VENTURATOS LORIO, 10 LA. CIV. L. TREATISE § 6:5 (discussing article 960 but recognizing that a renunciation in favor of all coheirs may be valid); Matthew D. Simone, Comment, Louisiana Post-Mortem Estate Planning—Alleviating the Burden of Double Taxation Imposed against a "Renunciation in Favor of," 54 LOYOLA L. REV. 905 (2008) (same); see also Aurienne v. Mt. Olivet, Inc., 96 So. 29, 31 (La. 1922) (stating that a renunciation made in favor of only one coheir would typically be problematic).

Where such a renunciation is made, article 960 deems that the successor has accepted and then donated his interest, rather than renouncing it. However, Nouveau does not argue that Laughlin, in his act of renunciation, directed his interest in his father's estate in a manner other than provided by law. Indeed, Nouveau admits that Laughlin's renunciation was formally valid, and argues instead that the scheme to transmit his inheritance interest to his mother should be deemed an "acceptance" of his renounced interest. We are not persuaded. Laughlin's renunciation was formally valid and led to his interest passing to his daughter, by operation of law. Though we conclude that our inquiry ends there, we note that Nouveau has not alleged, much less shown evidence, that Laughlin's daughter was somehow bound to transmit the renounced interest so as to make Laughlin's renunciation a "renunciation in favor of" that triggers article 960.

A creditor of a successor may, with judicial authorization, accept succession rights in the successor's name if the successor has renounced them in whole or in part to the prejudice of his creditor's rights. In such a case, the renunciation may be annulled in favor of the creditor to the extent of his claim against the successor, but it remains effective against the successor.

LA. CIV. CODE ANN. art. 967. The Louisiana Supreme Court has interpreted this article as requiring "a creditor [to] prove that an heir renounced his inheritance fraudulently or with an intent to wrongfully deprive the creditor of his claim on the debtor's property in order for the creditor to have a right to have the renunciation annulled and to accept the inheritance in the heir's stead." Succession of Neuhauser, 579 So. 2d 437, 441 (La. 1991).[12]

We determine that, for the purposes of our inquiry today, Louisiana law is indistinguishable from the Texas law at issue in Simpson, and we hold that, under Louisiana law, a valid pre-petition renunciation of an inheritance interest is not a transfer of the debtor's property under § 727(a)(2). Section 727(a)(2) denies a discharge to a debtor who has "transferred . . . property of the debtor, within one year before the date of the filing of the petition," 11 U.S.C. § 727(a)(2)(A) (emphasis added); Pratt, 411 F.3d at 565 (requiring that property of the debtor be transferred). The question then is whether article 967 recognizes or creates rights in the renounced inheritance that disturb the relation-back fiction. Absent such rights, the relation-back fiction controls and the renouncing debtor is deemed never to have had rights in the renounced inheritance. See LA. CIV. CODE ANN. art. 954.

---

[12] Neuhauser dealt with differently numbered and worded civil code sections. In 2000, the relevant civil code provisions were "simplified"; but there is no suggestion—either by case law, commentators, or the parties here—that the "simplifications" abrogated Neuhauser's holdings. See LA. CIV. CODE ANN. art. 967 revision comment ("This Article clarifies the prior rules and uses simpler terminology. As in prior law, judicial authorization for an acceptance by a creditor in the name of a successor is required, and that principle is set forth in the Article."); LORIO, 10 LA. CIV. L. TREATISE § 6:8 (noting that nothing substantively changed with the revisions and renumbering of article 967).

To analyze this issue, we first look to the text of the Louisiana Civil Code. Article 967 states that, even when a renunciation is "annulled in favor of the creditor to the extent of his claim against the successor, [such a renunciation] remains effective against the successor." LA. CIV. CODE ANN. art. 967 (emphasis added). As such, the article's text suggests that an annulment action under article 967, though it concerns the actions and intent of the renouncing successor, resolves only the right to the renounced interest as between the renouncing successor's creditors and the substituted successors. The text does not suggest that a renouncing successor gains an interest in the inheritance because, even if the annulment action is successful, article 967 specifies that the successor's renunciation remains effective against him. Id. And though the "creditor . . . accept[s] succession rights in the successor's name," id., we do not think that this clause, read in context, suggests that it is the debtor's rights that the annulling creditor accepts. Instead, we interpret that provision as specifying the prerequisite for the creditor bringing an action; the creditor must be a creditor of the renouncing successor. In sum, we read article 967 together with articles 954 and 947 to mean that a successful annulment of a renunciation does not disturb the fiction that the renouncing successor predeceased the decedent and thus never had rights in the inheritance interest. Thus, we do not think that the text of article 967 clearly recognizes or creates rights in the renouncing successor.

Second, the manner in which Louisiana courts have characterized the renunciation annulment action does not disturb our interpretation of article 967. Specifically, Louisiana courts have stated that the rights under article 967 are creditor's rights. See Aurienne, 96 So. at 30 ("Plaintiffs do not claim that they have the right, which is given by article [967] . . . to creditors of a person who has renounced an inheritance, to accept it to the extent of their claims." (emphasis added)); Succession of Andrews, 604 So. 2d 194, 198 n.2 (La. Ct. App. 1992) ("In

the oblique action, the creditor exercises a right belonging to the debtor in the debtor's name. In the revocatory action, the creditor acts in his own name to enforce his own rights. . . . We construe the [renunciation annulment action to be] a revocatory action.") (citations omitted; emphasis added).[13] These statements reinforce the notion that article 967 does not recognize or create rights in the renouncing successor.

Third, the procedure of the article 967 action does not disturb our interpretation of article 967. Louisiana courts require that the creditor who seeks an annulment petition the court to reopen the succession. See Neuhauser, 579 So. 2d at 439 ("[The creditor] petitioned the court to reopen the succession of the [decedent] alleging that the creditor was a judgment creditor of the [renouncing successor]."); id. at 442 ("'When the creditors wish to be authorized to accept a succession, which their debtor . . . has renounced to their prejudice, they must present a petition to the judge of the place where the succession is opened . . . .'" (quoting former article 1071)); Succession of Wagner, 746 So. 2d 696, 697 (La. Ct. App. 1999) (creditor "filed petitions to annul [successor's] renunciation" in trial court and the trial court annulled the renunciation, allowing creditor to accept the inheritance). The court overseeing the succession

---

[13] The Louisiana Supreme Court has also analogized the renunciation annulment action to a "revocatory action" under article 2036 of the Louisiana Civil Code. See Neuhauser, 579 So. 2d at 440; D.A. Pearce–Reggio, Note, Succession of Neuhauser: Death of a Creditor's Claim, 66 TUL. L. REV. 1101, 1109 (1992) ("[T]he [Louisiana Supreme C]ourt adhered to the prevailing view that an action to annul a debtor's renunciation falls within the ambit of the revocatory action."); see also LA. CIV. CODE ANN. art. 2036 ("An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency."). And we have noted that "under Louisiana and federal bankruptcy law, the trustee may avoid [a debtor]'s transfers . . . by stepping into the shoes of a[ ] . . . creditor who could have avoided those transfers by means of a revocatory action." Traina v. Whitney Nat'l Bank, 109 F.3d 244, 246 (5th Cir. 1997) (emphasis added). We derived this authority from § 544(b) of the bankruptcy code which states that a "trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). Given the posture of the present case, however, we need not consider whether the trustee has the power under § 544(b)(1) to bring an article 967 action.

then determines whether the annulling creditor may accept the renounced interest, in the debtor's name. See Neuhauser, 579 So. 2d at 440 ("'The creditors of the heir who . . . renounces an inheritance . . . can be authorized by the judge to accept it, in the name of the debtor and in his stead.'" (quoting predecessor to article 967)); id. at 442 ("'If . . . it is proved to the judge that the debtor . . . has renounced [the succession] to the prejudice of his creditors, [the judge] is bound to authorize the creditors to accept it in his stead.'" (quoting predecessor to article 967)). To effect the acceptance, "the judge has the duty 'to cause immediately to be made an inventory of the effects of the succession, to appoint an administrator to manage them, sell them, and pay the creditors.'" Id. (quoting predecessor to article 967). Satisfaction of the creditors thus comes from the succession estate, by petitioning the court, not the renouncing debtor, for relief. This procedural form is consistent with the interpretation that the renouncing successor does not have rights in the succession post-renunciation; the renouncing successor has, by definition, renounced his interest and that interest has "accrete[d] to those persons who would have succeeded to them if the successor had predeceased the defendant." LA. CIV. CODE ANN. art. 964. The procedure of the article 967 action does not clearly suggest that the article recognizes or creates rights for the renouncing successor in the renounced inheritance interest.

Article 967 does not clearly recognize or create rights in the renouncing successor. Thus, we cannot say that the relation back fiction is disturbed by that article. Accordingly, we are not persuaded that the Louisiana law is distinguishable from the Texas law at issue in Simpson, with respect to our present inquiry. Given such ambiguity and the fact that we must construe the § 727(a)(2) exceptions to discharge strictly against the creditor and liberally in favor of the debtor, we follow Simpson and hold that Laughlin did not transfer property for the purposes of § 727(a)(2) by executing a pre-petition renunciation

19

of his interest in his father's estate.   Accordingly, discharge was improperly denied under that subsection.

## III.  CONCLUSION

For the foregoing reasons, we REVERSE the bankruptcy court's judgment denying Laughlin a discharge under 11 U.S.C. § 727(a)(2) and REMAND for further proceedings consistent with this opinion.

REVERSED AND REMANDED.